

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-13-00158-CR
_____

JUSTIN DAVIS JOHNSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. CR12127; Honorable Ralph H. Walton, Jr., Presiding

November 19, 2014

## OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Justin Davis Johnson, was convicted by a jury of aggravated assault causing serious bodily injury with a deadly weapon, a firearm, and aggravated assault by threat with a deadly weapon, a firearm.[1] He was sentenced to twelve years and six years confinement, respectively, with the two sentences to be served concurrently. On appeal, Appellant asserts the evidence was legally insufficient (1) to prove he was not

---

[1] *See* TEX. PENAL CODE ANN. §§ 22.01, 22.02 (West 2011).

justified in using deadly force against the victim of the first offense and (2) to prove he committed aggravated assault with a deadly weapon against the victim of the second offense. He also asserts the trial court erred by permitting two witnesses, (3) Smithson and (4) Frisbie, to testify as experts, and (5), in so doing, failed to act as a neutral and impartial judge, and (6) also erred by denying a voluntary intoxication instruction in the punishment charge. We affirm.

BACKGROUND

On December 27, 2011, Appellant and Kent Bolsinger arrived at a hunting lease located in Hood County, Texas. Ryan Armstrong, whom Appellant had never previously met, shared the hunting cabin on the lease with the two other men. After dinner on the 28th, Appellant was outside the cabin firing rounds into a fire pit. Armstrong and Appellant, both of whom had been drinking, exchanged words concerning this particular conduct. When Appellant protested and started to leave, Armstrong and Bolsinger prevented him from doing so due to his state of intoxication. Bolsinger took Appellant's keys and Armstrong "escorted" him to a bunk room in the cabin, pushed him onto a sofa and told him to "sleep it off." When Armstrong turned and reached the doorway, Appellant shot him with a .380 semi-automatic handgun, once in the jaw and once in the back.[2] After Bolsinger went to assist Armstrong, Appellant pointed his handgun at him

---

[2] Not surprisingly, Appellant's version of the events differs somewhat from that testified to by Armstrong and Bolsinger. According to Appellant, Armstrong knocked him to the ground, slammed him face-first into his vehicle, threw him into a fence and then forcibly escorted him into the sleeping area of the cabin, where he started hitting Appellant in the head. Appellant further testified that Armstrong placed his hands around Appellant's neck and screamed, "I'm going to fucking kill you." Appellant testified that, fearing for his life, he shot Armstrong two times, once in the jaw causing him to spin around and then once in the back.

2

and asked for the keys to his vehicle. Bolsinger did not give Appellant his keys but instead summoned medical assistance.

In March 2012, Appellant was indicted for two counts of aggravated assault with a deadly weapon, to wit: a firearm. Count one alleged that on or about December 28, 2011, Appellant intentionally, knowingly, or recklessly caused "serious bodily injury to [Armstrong] by shooting him with a firearm . . . ." Count two alleged that, on or about the same date, Appellant intentionally or knowingly threatened "imminent bodily injury to [Bolsinger]" and did then and there use or exhibit a deadly weapon, to wit: a firearm.

Following a five-day jury trial, Appellant was found guilty on both counts and the trial court issued two judgments sentencing Appellant to twelve years on count one and six years on count two, with the two sentences to be served concurrently. This appeal followed.

ISSUE ONE: SELF-DEFENSE

Appellant asserts there was legally insufficient evidence at trial to establish he was not justified in using deadly force against Armstrong. In support, he contends he was justified in shooting Armstrong because he was in fear of death or imminent bodily injury. At the time of the incident, both men had been drinking heavily. Appellant testified at trial that, prior to the shooting, Armstrong had punched, kicked and choked him. Appellant also produced character witnesses to testify he was normally a peaceful, law-abiding person.

3

To obtain a conviction for aggravated assault under count one of the indictment, the State was required to prove beyond a reasonable doubt that Appellant intentionally, knowingly, or recklessly caused bodily injury to Armstrong while using or exhibiting a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2) (West 2011). A deadly weapon includes a firearm. *See id.* § 1.07(a)(17)(A). It is undisputed that Appellant used deadly force and intended to shoot Armstrong twice with a semi-automatic handgun. Appellant asserts, however, he was justified in using deadly force because he reasonably believed deadly force was immediately necessary to protect him against Armstrong's use or attempted use of unlawful deadly force. *See id.* § 9.32 (a).

Appellant had the initial burden of production on the issue of self-defense and he was required to bring forward some evidence to support the defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once he produced that evidence, the State had the burden of persuasion to disprove the defense. *Id.* This burden does not require the production of additional evidence rebutting self-defense, but it does require the State to prove its case beyond a reasonable doubt. *Id.* Self-defense is an issue of fact to be determined by the jury, *London v. State,* 325 S.W.3d 197, 202 (Tex. App.—Dallas 2008, pet. ref'd), and when, as here, the trier of fact finds the defendant guilty, there is an implicit finding that the jury rejected the defendant's self-defense theory. *Saxton v. State,* 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

When an appellant challenges the legal sufficiency of the evidence to support rejection of a defense such as self-defense, the question is not whether the State presented evidence which refuted appellant's self-defense evidence. *Saxton,* 804 S.W.2d at 914. Rather, we examine all of the evidence in a light most favorable to the

4

verdict to determine whether any rational trier of fact could have found beyond a reasonable doubt (1) the essential elements of the alleged offense and (2) against appellant on the self-defense issue. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 33 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). *See Saxton*, 804 S.W.2d at 914. In our review, we evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000).

The jury's decision to reject Appellant's defensive claims ultimately hinges on the credibility of witnesses. Armstrong testified he grabbed Appellant by the back of his neck and escorted him to the cabin—not "an aggressive grab, it was more of a guide." He then shoved Appellant into the corner of the bunk room where the sofa was located. Bolsinger testified that, before Appellant shot Armstrong, Armstrong was helping Appellant up the cabin's front porch stairs with one hand on the side of his shoulder, one hand kind of on Appellant's waist and back—"kind of helping guide him into the cabin." Bolsinger testified he did not observe any violence and did not hear any physical altercation prior to the shooting. Bolsinger also testified that it was not until Armstrong was standing on the threshold of the doorway between the cabin's living room and bunk room that Armstrong was first shot by Appellant. Appellant then walked over to where Armstrong was lying and shot him a second time in the back. Contrary to the testimony of Armstrong and Bolsinger, Appellant testified that, prior to shooting Armstrong, he had been kicked, beaten, choked and thrown about the cabin by Armstrong. He testified he reacted by rapidly firing two shots.

The jury is the sole judge of the credibility of witnesses and weight to be given to their testimony. *Golden Eagle Archery v. Jackson,* 116 S.W.3d 757, 761 (Tex. Crim. App. 2003). As fact finder, the jury is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.3d 459, 461 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). The statements of Appellant and his witnesses do not conclusively prove a claim of self-defense. *See London*, 325 S.W.3d at 203; *Denman v. State,* 193 S.W.3d 129, 132-33 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (finding evidence sufficient to support conviction of aggravated assault under *Jackson v. Virginia* despite defendant's claim of self-defense, which was based on testimony of defendant and other witnesses who stated complainant had assaulted or threatened defendant on prior occasions). Further, that Appellant walked up to Armstrong after the first shot and shot Armstrong a second time in the back while he lay on the floor, if believed by the jury, is evidence negating his claim of self-defense. *See Kirk v. State,* 421 S.W.3d 772, 781 (Tex. App.—Fort Worth 2014, pet. ref'd); *Smith v. State,* 355 S.W.3d 138, 146-47 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

Based on the testimony of Bolsinger and Armstrong coupled with Appellant's conduct subsequent to the first shot, the jury could have reasonably concluded that Appellant's conduct was inconsistent with his self-defensive claims. *See Cleveland v. State,* 177 S.W.3d 374, 380-81 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd), *cert. denied*, 547 U.S. 1073, 1126 S.Ct. 1774, 164 L.Ed.2d 523 (2006) (finding that jury could have reasonably concluded that defendant's conduct in continuing to stab his wife's back as she lay bleeding on floor was inconsistent with his claim of self-defense).

Having considered the entire record, we conclude the jury rationally could have found each element of the charged offense was proven beyond a reasonable doubt and that it could have rationally rejected Appellant's claim of self-defense. *See Zuliani*, 97 S.W.3d at 594. Accordingly, we hold the evidence was sufficient to support Appellant's conviction for aggravated assault against Armstrong. Appellant's first issue is overruled.

ISSUE TWO:  AGGRAVATED ASSAULT WITH A DEADLY WEAPON

Appellant asserts no rational trier of fact would have found him guilty of pointing a gun at Bolsinger and threatening to shoot him if he didn't give Appellant his truck keys. He asserts inconsistencies in Bolsinger's account of what occurred that night called his credibility into question and the jury should have believed him rather than Bolsinger.

To obtain a conviction for aggravated assault under count two of the indictment, the State was required to prove beyond a reasonable doubt that Appellant intentionally or knowingly threatened Bolsinger with imminent bodily injury while using or exhibiting a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2) (West 2011). Because the standard of review for legal sufficiency set forth in our discussion of issue one applies equally here, we will not restate it.

Appellant's second issue also presents a credibility question decided by the jury. Considering the evidence in a light most favorable to the verdict, Bolsinger testified that, after shooting Armstrong in the back, Appellant pointed the handgun at him and demanded his truck keys. Appellant denied the threat to Bolsinger took place. The jury is the sole judge of the witnesses' credibility and weight to be given their testimony. *See Golden Eagle Archery,* 116 S.W.3d at 761. Further, while there may have

7

appeared to be inconsistencies in Bolsinger's testimony regarding what occurred that night, those inconsistencies do not render the evidence insufficient to support a conviction, *see Cooks v. State*, 844 S.W.2d 697, 708 (Tex. Crim. App. 1992), and we reject Appellant's argument that credibility issues among the State's witnesses render the evidence insufficient. Bolsinger's testimony alone is sufficient to convict Appellant. *See Anderson v. State,* 11 S.W.3d 369, 375-76 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). Appellant's second issue is overruled.

ISSUES THREE, FOUR AND FIVE: RIGHT TO CONFRONTATION AND IMPARTIAL JUDGE

In issues three and four, Appellant asserts the trial court abused its discretion by permitting Dr. John Smithson and Sonny Frisbie to testify as expert witnesses. In support, Appellant contends the trial court violated his statutory and constitutional rights to confrontation as well as his First and Fourteenth Amendment rights under the United States Constitution by permitting them to testify at trial. In his fifth issue, Appellant asserts he was denied a trial before a fair and impartial judge because the trial judge erroneously permitted Smithson and Frisbie to give expert testimony.

RIGHT TO CONFRONTATION

Because Appellant did not object at trial to testimony by either Smithson or Frisbie based on any denial of any statutory or constitutional right to confrontation, Appellant waived these issues on appeal. *See Clark v. State,* 365 S.W.3d 333, 339 n.1 (Tex. Crim. App. 2012). *See also Wright v. State,* 28 S.W.3d 526, 536 (Tex. Crim. App. 2000), *cert. denied*, 531 U.S. 1128, 121 S.Ct. 885, 148 L.Ed.2d 793 (2001) (defendants waive their rights to confrontation by failing to object to the admission of certain

evidence at trial). The issue on appeal must comport with the objection made at trial. *See Clark,* 365 S.W.3d at 339 (citing *Thomas v. State,* 723 S.W.2d 696, 700 (Tex. Crim. App. 1986)).

FAIR AND IMPARTIAL JUDGE

Appellant next asserts he was denied a trial before a fair and impartial judge because the trial judge permitted Smithson to testify to the presence of foreign bodies in CAT scan and x-ray images and read Dr. Ashley Johnson's report from Armstrong's medical records. He also asserts his rights were violated when the trial court permitted Frisbie to testify about test-firing rounds from the handgun used by Appellant to shoot Armstrong. We disagree.

Due process requires a neutral and detached judge. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). A judge should not act as an advocate or adversary for any party. *Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). To reverse a judgment on the ground of improper conduct or comments of the judge, we must find (1) that judicial impropriety was in fact committed and (2) probable prejudice to the complaining party. *Id.* "In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case." TEX. CODE CRIM. PROC. ANN. art. 38.05 (West 1979).

We find that the trial court did not engage in any judicial impropriety by simply ruling on the admissibility of evidence. Pursuant to article 38.05 of the Texas Code of Criminal Procedure, the trial court decided whether the evidence was admissible and made no statement "upon the weight of the same or its bearing in the case." *Id.* As regards Smithson reading Ashley's report, Appellant had agreed to admit Armstrong's medical records including Ashley's report without objection in open court. Furthermore, Frisbie testified as a fact witness who described test-firing the handgun and the direction the shell casings were ejected from the gun. As such, he was merely testifying as a fact witness concerning his personal observations and he did not express any opinion or testify to any conclusions from those facts.

Assuming, without deciding, the trial court erred in allowing Smith to comment on CAT scan and x-ray images, whether there was fundamental error depends on whether Appellant can establish egregious harm. *See Powell v. State,* 252 S.W.3d 742, 744 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Moreno v. State,* 900 S.W.2d 357, 359 (Tex. App.—Texarkana 1995, no pet.) (citing *Brewer v. State*, 572 S.W.2d 719, 721 (Tex. Crim. App. [Panel Op.] 1978)).[3] A trial court's comments do not constitute fundamental error unless they rise to such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury. *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). Here, the admission of Smithson's testimony related to the Ashley report and Frisbie's testimony were not reversible error.

___

[3] Appellant made no objection at trial based on the First or Fourteenth Amendments because of a denial of his rights to a fair and impartial judge or trial. When no objection is made, "remarks and conduct of the court may not be subsequently challenged unless they are fundamentally erroneous—that is, the error creates egregious harm." *See Powell v. State,* 252 S.W.3d at 744-45.

Furthermore, Smithson's testimony described CAT scan and x-ray images that were visible representations of two bullets, one in Armstrong's neck and another near his spine giving some indication of the possible direction from which the bullets entered his body—all of which had been testified to by numerous other witnesses without objection. The similar testimony from other witnesses mitigates against the harmfulness of any error as does the overwhelming evidence of Appellant's guilt—eyewitness testimony of Armstrong and Bolsinger coupled with other corroborating evidence, i.e., testimony that a spent shell casing was found in the bunk room coupled with Frisbie's testimony regarding the direction spent shell casings were ejected from the handgun, Frisbie's testimony describing the location and amount of blood stains in the bunk room resulting from the shooting, photographs showing the cabin's living room furniture was undisturbed, EMS paramedic Jody Alvey-Fries's testimony indicating that, at the cabin, Appellant evidenced only a superficial wound to his ear that was not fresh, Bolsinger's testimony that Appellant's abrasion on his ear resulted from an accident chopping wood earlier that day, and Investigator Patrick Felan's testimony that he collected bullet fragments from Armstrong's neck and back. *See Mosley v. State,* 983 S.W.3d 249, 258 (Tex. Crim. App. 1999), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).

Given the strength of the State's case and the presence of other testimony concerning the locations where Armstrong was shot and the direction the bullets were traveling when they struck Armstrong, we find beyond a reasonable doubt that the admission of Smithson's testimony regarding CAT scan and x-ray images did not contribute or affect the very basis of the case or vitally affect Appellant's justification

theory of self-defense. *See Cosio v. State,* 353 S.W.3d 766, 777 (Tex. Crim. App. 2011). *See also* TEX. R. APP. P. 44.2(a). Accordingly, we overrule Appellant's third, fourth and fifth issues.

ISSUE SIX—VOLUNTARY INTOXICATION INSTRUCTION

Finally, Appellant asserts the trial court erred when it denied him a voluntary intoxication instruction at the end of the penalty phase of the trial. He asserts that shooting Armstrong was so out of character for him that the trial court should have concluded that he did not know his conduct was wrong. In support, he points to his mental state of gross intoxication and character witnesses who testified to his peaceful, law-abiding character.

Insanity is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong. TEX. PENAL CODE ANN. § 8.04(a) (West 2011). Voluntary intoxication is *not* a defense to the commission of a crime; but evidence of *temporary insanity* caused by intoxication and may be introduced by the actor in mitigation of his punishment. *Id.* at (a), (b). In other words, unlike the defense of insanity which would bar the conviction of a crime, evidence of temporary insanity caused by intoxication could be used by a jury to lessen the punishment.

Like the affirmative defense of insanity and any other defensive issue, whether a defendant is entitled to a mitigation instruction under section 8.04(b) depends on whether the issue is raised by the evidence. *Arabie v. State*, 421 S.W.3d 111, 114 (Tex. App.—Waco 2013, pet. ref'd). Before it is necessary for the trial court to

12

affirmatively instruct the jury on voluntary intoxication as mitigating evidence at the punishment stage of the trial, the defendant must establish that he was intoxicated and that intoxication rendered him temporarily "insane," *Arnold v. State*, 742 S.W.2d 10, 14 (Tex. Crim. App. 1987), i.e., the defendant must establish that his voluntary intoxication caused him to not know his conduct was wrong. *Mendenhall v. State*, 77 S.W.3d 815, 817-18 (Tex. Crim. App. 2002). He must do more than merely present evidence of intoxication or even gross intoxication. *Arnold*, 742 S.W.2d at 14. He must show that either intoxication made him unaware that what he was doing was wrong, or it made him incapable of conforming his conduct to the law. *See Cordova v. State*, 733 S.W.2d 175, 190 (Tex. Crim. App. 1987).

Here, Appellant's primary defense in the trial court was self-defense. He testified he had a clear recollection of the crime and claimed he was only doing what was necessary to defend himself against an attack by Armstrong. He gave a detailed step-by-step account of what occurred the night of the incident and what he was thinking and feeling at the time the crime was committed. His character witnesses described Appellant as a law-abiding man who knew right from wrong.

Despite evidence showing Appellant was intoxicated, there is no evidence tending to show that he did not know that his conduct was wrong. *See Cordova*, 733 S.W.2d at 190 (evidence that defendant was "crazy drunk" insufficient to show temporary insanity). Because he failed to present evidence of temporary insanity, he was not entitled to a mitigating instruction on insanity by intoxication during the punishment phase, *Meine v. State*, 356 S.W.3d 605, 611 (Tex. App.—Corpus Christi 2011, pet. ref'd), and we find the trial court did not err in refusing to submit an instruction

on voluntary intoxication. *Rainey v. State*, 949 S.W.2d 537, 543 (Tex. App.—Austin 1997, pet. ref'd*), cert. denied*, 525 U.S. 880, 119 S.Ct. 186, 142 L.Ed.2d 152 (1998). Appellant's sixth issue is overruled.

CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Publish.