

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00418-CR

———————————————

JASON NEAL MCBURNETT, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1505402D

Before Kerr, Birdwell, and Walker, JJ.
Opinion by Justice Walker

## OPINION

Jason Neal McBurnett appeals his conviction for aggravated sexual assault of a child, K.M. He raises two points on appeal, contending that the trial court erred by denying his motion for mistrial following a reference to his incarceration and by refusing his request to include an instruction on the mitigation defense of temporary insanity caused by intoxication in the punishment phase jury charge. We affirm.

## I. BACKGROUND

McBurnett was formerly married to S.W., K.M.'s mother. He was a father figure to K.M. and, after his divorce from her mother, she continued to visit him at the Budget Suites hotel where he lived.

In the fall of 2016, S.W.'s cousin, C.W.,[1] was living at the Budget Suites with McBurnett. Late one night when K.M. was visiting, McBurnett asked C.W. to go to Walmart for him. McBurnett had been drinking and was intoxicated at the time. K.M. wanted to go with C.W. but McBurnett insisted that she stay behind. C.W. was gone for about an hour and, when she returned, she noticed that K.M. and McBurnett were unusually quiet and that McBurnett had changed his pajama pants. C.W. testified that after that night, K.M. slept all the time, threw up often, and became distant.

---

[1]S.W. testified that C.W. is her cousin. C.W. testified that S.W. is her aunt but she also explained that S.W. is her father's brother's daughter, which confirms that S.W. is C.W.'s cousin.

On June 1, 2017, K.M. told her mother that McBurnett had raped her during a visit at the Budget Suites hotel. She said that McBurnett was very drunk and threatening at the time. S.W. then learned that K.M. was approximately eight months pregnant. K.M. gave birth to a baby girl on June 29, 2017. K.M. was 12 years old at the time of the sexual assault and 13 when her child was born.

After the baby's birth, the police obtained DNA swabs from K.M., the baby, and McBurnett. DNA comparison testing revealed that it was "2.2 billion times more likely that Jason McBurnett is the true father than an untested random person in the Caucasian population."

The jury found McBurnett guilty of aggravated sexual assault of a child and assessed punishment at 55 years' confinement and a $10,000 fine. The court entered judgment in accordance with the jury's verdict.

## II. MOTION FOR MISTRIAL

Sergeant Hopson, an officer with the Fort Worth Police Department, testified about obtaining DNA samples from McBurnett, K.M., and the baby. The State asked Hopson on direct examination when a DNA sample was collected from McBurnett. The officer responded, "I don't remember. I know that he -- I know that I visited him in the Tarrant County Jail -- ." The defense immediately objected to "custodial references in detention." The trial court sustained the objection and, upon the defense's request, instructed the jury to disregard the officer's answer. The defense

3

then moved for a mistrial, which the court denied. McBurnett asserts in his first point on appeal that this denial was error.

"A mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). A mistrial is appropriate only when the record reveals highly prejudicial and incurable error. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). The court of criminal appeals has recognized that "[o]rdinarily, a prompt instruction to disregard will cure error associated with an improper question and answer." *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000); *see Simpson*, 119 S.W.3d at 272. Thus, a trial court must grant a mistrial only when an improper question or answer is "clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)); *see Simpson*, 119 S.W.3d at 272.

We review the denial of a motion for mistrial for abuse of discretion, viewing the evidence in the light most favorable to the trial court's ruling and considering only the arguments before the court at the time of its ruling. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.*

4

McBurnett argues that he was entitled to a mistrial because the reference to his incarceration violated his constitutional right to a presumption of innocence. He urges that the error in this case is comparable to those at issue in *Randle v. State*, 826 S.W.2d 943 (Tex. Crim. App. 1992), and *Long v. State*, 823 S.W.2d 259 (Tex. Crim. App. 1991). *Randle* involved a defendant who was compelled to appear at trial in jail clothing. 826 S.W.2d at 944. *Long* involved a defendant who was compelled to appear in court in shackles. 823 S.W.2d at 282. In both instances, the court of criminal appeals recognized the potential for violating the defendant's right to be presumed innocent. *See Randle*, 826 S.W.2d at 944; *Long*, 823 S.W.2d at 282.

Unlike *Randle* or *Long*, the present case involves a single brief, unsolicited reference to the defendant being in jail. Such a reference, standing alone, is generally cured by an instruction to disregard. *Smith v. State*, 491 S.W.3d 864, 873 (Tex. App.— Houston [14th Dist.] 2016, pet. ref'd). Indeed, the court of criminal appeals has repeatedly held that a prompt instruction to disregard is sufficient to cure an inadvertent reference to a defendant's prior incarceration. *See, e.g.*, *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992); *Gardner v. State*, 730 S.W.2d 675, 697 (Tex. Crim. App. 1987).

McBurnett nevertheless contends that he was entitled to a mistrial under the court of criminal appeals' reasoning in *Blue v. State*, 41 S.W.3d 129 (Tex. Crim. App. 2000). In that case, the trial judge explained to potential jurors that the jury selection process was delayed because the defendant and his attorney were discussing whether

to accept a plea offer from the State. *Id.* at 130. The judge also told the jury, "obviously, I prefer the defendant to plead." *Id.* The court of criminal appeals held that these comments tainted the defendant's presumption of innocence and constituted fundamental constitutional error. *Id.* at 132.

The error in *Blue* was clearly of a different character and magnitude than the error here at issue. As the court explained in *Blue*:

> A juror who knows at the outset that the defendant seriously considered entering into a plea agreement no longer begins with a presumption that the defendant is innocent. A juror who hears the judge say that he would have preferred that the defendant plead guilty might assume that the judge knows something about the guilt of the defendant that the juror does not. Surely, no trial judge would want an innocent man to plead guilty, no matter how much delay and expense he might be causing.

*Id.*

In contrast to the judge's comments in *Blue*, Hopson's reference in this case to McBurnett's incarceration was "uninvited and unembellished and mirrored those references typically cured by an instruction to disregard." *See Smith*, 491 S.W.3d at 873. Also unlike the judge's comments in *Blue*, Hopson's mere reference to seeing McBurnett in jail would not have given the jury any reason to believe that he knew something about McBurnett's guilt or innocence that the jury did not know or that McBurnett was contemplating accepting a plea deal. While the reference to McBurnett's incarceration was inadmissible, it was "not so inflammatory as to

6

undermine the efficacy of the trial court's instruction to disregard." *Kemp*, 846 S.W.2d at 308; *see Gardner*, 730 S.W.2d at 697.

We conclude that the trial court's prompt instruction to disregard the officer's reference to McBurnett's incarceration cured the error. *See Smith*, 491 S.W.3d at 873. As a result, the court did not abuse its discretion by denying McBurnett's motion for mistrial. *See id.* Even so, we briefly address the issue of harmful error to correct an apparent misunderstanding evident from the briefing.

McBurnett seems to conflate harmful error analysis with the determination of whether error exists in the first instance. While the two concepts are related in the context of a motion for mistrial, they are not coextensive:

> A harm analysis is employed only when there is error, and ordinarily, error occurs only when the trial court makes a mistake. Here, the trial court sustained the defense objection and granted the requested instruction to disregard. The only adverse ruling—and thus the only occasion for making a mistake—was the trial court's denial of the motion for mistrial. Under those circumstances, the proper issue is whether the refusal to grant the mistrial was an abuse of discretion.

*Hawkins*, 135 S.W.3d at 76–77 (footnotes omitted).

The *Hawkins* court went on to explain that whether a mistrial should be granted involves many of the same considerations as a harm analysis, but that analysis is conducted in light of the trial court's curative instruction. *Id.* at 77. Again, "[o]nly in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Id.*

7

We have determined that, in light of the trial court's instruction to disregard, the prejudice from the reference to McBurnett's incarceration was not incurable and that denying the motion for mistrial was therefore not error. As a result, we need not conduct a harm analysis. *See id.* at 76–77; *see also* Tex. R. App. P. 44.2(a) (defining the harm standard applicable to constitutional error).

Point one is overruled.

### III. JURY CHARGE

McBurnett requested that the trial court include an instruction on temporary insanity caused by intoxication in the jury charge on punishment. The court denied that request, stating that there was no nexus between McBurnett's intoxication and any temporary insanity. McBurnett asserts in his second point that this refusal to charge the jury was error.

The first step in addressing a claim of jury charge error is to determine whether the charge was, in fact, erroneous. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015); *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If the charge is erroneous, then the court engages in a harm analysis. *Cortez*, 469 S.W.3d at 598; *Kirsch*, 357 S.W.3d at 649.

While voluntary intoxication is not a defense to the commission of a crime, a defendant may introduce evidence of temporary insanity caused by voluntary intoxication in mitigation of the punishment for the offense for which he is being tried. Tex. Penal Code Ann. § 8.04(a), (b). A trial court must instruct the jury in

8

accordance with Section 8.04 "[w]hen temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was caused by intoxication." *Id.* § 8.04(c).

"It is well settled that an accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the evidence." *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). As a result, a defendant is entitled to an instruction on temporary insanity caused by intoxication if "some" evidence supports it. *Trevino v. State*, 100 S.W.3d 232, 238 (Tex. Crim. App. 2003). But it is not sufficient to "merely present evidence of intoxication or even gross intoxication." *Arnold v. State*, 742 S.W.2d 10, 14 (Tex. Crim. App. 1987). Rather, there must also be evidence that the defendant was unable to understand the wrongfulness of his conduct. *Ex parte Martinez*, 195 S.W.3d 713, 722 (Tex. Crim. App. 2006); *see* Tex. Penal Code Ann. § 8.01(a) (providing that "insanity" requires a showing that the defendant did not know that his conduct was wrong).

There is evidence in this case that McBurnett was intoxicated, and perhaps grossly intoxicated, at the time of the offense. But concerning the issue of temporary insanity caused by that intoxication, McBurnett argues only that "where a 41-year old law-abiding man drinks to the point of intoxication and thereby impregnates his 12-year old stepdaughter, there is more than merely circumstantial evidence of temporary

insanity." This, in essence, is an argument that McBurnett must have been temporarily insane to commit such a heinous crime because he was not otherwise a criminal. In other words, he argues that, given his lack of prior unlawful behavior, he must not have known his conduct was wrong or else he would not have engaged in it. This argument ignores the applicable standard.

The question is whether there was any evidence that, at the time of the sexual assault on his minor stepdaughter, McBurnett *did not know* that that sexual assault was wrong, not whether his conduct was out of character, without precedent, or without some rational explanation. *See Johnson v. State*, 452 S.W.3d 398, 406 (Tex. App.—Amarillo 2014, pet. ref'd) (rejecting argument that defendant was entitled to temporary insanity caused by intoxication instruction because shooting was so out of character); *Strong v. State*, No. 06-16-00174-CR, 2017 WL 2913825, at *5 (Tex. App.—Texarkana July 10, 2017, pet. ref'd) (mem. op., not designated for publication) (concluding that evidence that crime was out of character for defendant was insufficient to warrant temporary insanity by intoxication instruction).

There is no evidence in the record that McBurnett did not know at the time of the offense that his conduct was wrong. The trial court therefore properly refused to include an instruction on temporary insanity caused by intoxication in the punishment phase jury charge. Point two is overruled.

## IV. CONCLUSION

The trial court's judgment is affirmed.

/s/ Brian Walker

Brian Walker
Justice

Publish

Delivered: May 6, 2021

11