

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-22-00009-CR

———————————————————

ROMELL ROBERT CARTER, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 235th District Court
Cooke County, Texas
Trial Court No. CR20-00170

Before Sudderth, C.J.; Kerr and Bassel, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

In two points, Appellant Romell Robert Carter argues that the trial court acted with a bias toward him when it pointed out a variance between the indictment's date of a prior conviction used to enhance a driving-while-intoxicated charge to a third-degree felony under Texas Penal Code Section 49.09(b) and the date shown on the prior judgment of conviction introduced into evidence. We disagree. The trial court acted appropriately in performing its role of managing the presentation of evidence. Beyond that, the trial court's actions and statements hardly reveal a deep-seated favoritism or antagonism that show its fair judgment was impaired. Nor did pointing out a variance prejudice Appellant because the variance between the indictment and the proof—even if left uncorrected—would not have been fatal to the State's proof. Appellant's further subargument that—even with the corrective action taken—the proof fails because the convictions alleged against him were not properly sequenced is simply wrong. We affirm the trial court's judgment convicting Appellant of a third-degree felony under Section 49.09(b) and imposing a sentence of four years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

## II. Factual and procedural background

The points of error in this appeal arise from Appellant's indictment for a DWI offense that was enhanced to a third-degree felony because he allegedly had been

2

convicted "two times of any other offense relating to the operating of a motor vehicle while intoxicated." *See* Tex. Penal Code Ann. § 49.09(b)(2). Appellant does not challenge the sufficiency of the evidence to support the State's contention that he was driving while intoxicated on the occasion for which he was indicted; thus, we do not catalog the proof on that issue. Instead, Appellant's points revolve around (1) a variance between the indictment's allegation of the date of a prior conviction and the actual date of that conviction and (2) the trial court's proactive steps to amend the indictment to correct the variance.

The indictment in this matter originally read as follows:

And it is further presented that prior to the commission of the charged offense (hereafter styled the primary offense), on the 9th day of October, 2012, in cause number 11DT000000276 in the Circuit Court of Kendall County, Illinois, the defendant was convicted of Driving Under the Influence [of] Alcohol; and on the 15th day of November, *2015*, in cause number 2010DT001188 in Circuit Court of DuPage County, Illinois, the defendant was convicted of Driving Under the Influence [of] Alcohol. [Emphasis added.]

Certified copies of the judgments were introduced into evidence without objection from Appellant. When the certified copies referencing the second conviction were introduced, the prosecutor offered the explanation that "[t]he second one is a judgment from DePage County, Illinois, showing a conviction on November 15th, *2012*." [Emphasis added.]

After the introduction of the certified copies, the jury heard the testimony of the blood–alcohol section supervisor at the Texas Department of Public Safety who

3

testified to Appellant's blood–alcohol content after he was arrested in Cooke County. After this witness was excused, the following exchange occurred outside the presence of the jury with respect to the variance between the date on one of the certified copies of the Illinois judgment that had been introduced and the indictment's allegations about that judgment of conviction:

> *THE COURT:* Okay. Let the record reflect the jury panel has left the courtroom. Present is [Appellant] in person, and by counsel[,] and the State. Frankly, I don't know what my obligation is here, and it didn't come to light until . . . you offered 8 and 9, and there was no objection and they were admitted. And it wasn't until you said what they were[] because I had written out the elements of the offenses, and checked off as they were proven, and if you want to do a trial amendment, I'm going to grant it because it's just the date. But you said -- and why don't y'all come look.
>
> The prior on the DuPage County you said -- when you read it to the jury, you said, November 15th, 2012, and that does appear to be the date, but the indictment says November 15th, 2015.
>
> And you might want to look at the first one because I can't tell from looking at it. Is that date of conviction right?
>
> So I think if he were to make a trial amendment to amend the indictment, I would grant it.
>
> [*State's Counsel #1*]: Oh, wow. Yeah, you're right. Is that what was in the charge? I guess it doesn't matter.
>
> *THE COURT:* Yeah, the charge does say --
>
> [*State's Counsel #2*]: I based the charge on the indictment.
>
> *THE COURT:* The charge -- yeah, the charge says 2015.
>
> [*State's Counsel #2*]: That's what the indictment says, correct?
>
> *THE COURT:* Yeah, but that's not what the exhibit said.

4

[*State's Counsel #2*]: I'll just change that.

[*Defense Counsel*]: I'm okay with that.

THE COURT: Okay.

[*State's Counsel #1*]: Your Honor, I just move to make a trial amendment on that. And really I think for appellate purposes or anything, I think alleging that there's two prior convictions prior to this --

THE COURT: Is okay.

[*State's Counsel #1*]: -- is okay. But I would -- to clean the record, I think that that's a safer way to do it.

THE COURT: Okay. And then, you know, I don't know that that October 9th is --

[*State's Counsel #1*]: Well, and I know what you're talking about on that.

THE COURT: I couldn't tell you what the date is.

[*State's Counsel #1*]: Yeah, I agree. The October 9th date, because I actually talked to somebody up there.

THE COURT: And that's what they said?

[*State's Counsel #1*]: The October 9th date was the date of the bench trial. The sentencing order was entered on that date.

THE COURT: Okay.

[*State's Counsel #1*]: So I'm with you on that one doesn't make a lot of sense.

THE COURT: Yeah.

[*State's Counsel #1*]: But the bench trial was a separate date. The order was entered a separate date than the bench trial on that.

THE COURT: Okay. So --

5

[*Defense Counsel*]: But is that a judgment?

[*State's Counsel #1*]: Yeah. It's still the judgment. No, I think we're talking about 276.

THE COURT: Okay. So --

[*Defense Counsel*]: I mean, you have two judgments, right?

[*State's Counsel #1*]: Right. Here. (Tenders.)

THE COURT: Okay. I didn't know what my obligation was here. And like I said, it didn't come up until you said it when you read it to the jury, and I just knew I had 2015. And so if he makes a motion for a trial amendment to change it to 11/15, 2012 and you don't object and you waive any 10 days' preparation; is that correct?

[*Defense Counsel*]: Yes.

THE COURT: On behalf of the Defense, [defense counsel], you waive any 10 days?

[*Defense Counsel*]: I do. I do.

THE COURT: Okay. Well, the [c]ourt will allow a trial amendment. And any objection to the [c]ourt just amending the indictment?

[*State's Counsel #1*]: No, Your Honor.

THE COURT: Okay. So then you'll amend the charge?

[*State's Counsel #2*]: Yes, Your Honor.

THE COURT: But let me look at one other thing on the charge and we'll have more -- we might as well do that now. Let's look at the charge.

[*Defense Counsel*]: So is it 2012 and 2010?

THE COURT: No, I think they're both 2012.

6

[*State's Counsel #1*]: Well, and that's the other thing that was weird about the way that Illinois does this.

[*Defense Counsel*]: This one is 2010[,] and this one is 2012.

[*State's Counsel #1*]: Well, here, look. Illinois does it weird. This one -- oh, no, this one's 2012. That one is 2012. This one -- see, this was his original -- okay. That was the original sentence on June 24th, 2010, but his probation got revoked, and then they did a resentence of him on this day. So it's kind of like I considered this to be the date of the final conviction.

[*Defense Counsel*]: Okay.

[*State's Counsel #1*]: I mean, I don't know because I don't know how Illinois considers that. But it was the final conviction because it says conviction is entered, [Appellant's] resentenced so that's -- but that was on November 15th, 2012.

[*Defense Counsel*]: So they're both 2012?

[*State's Counsel #1*]: Yeah.

[*Defense Counsel*]: Okay.

THE COURT: The other thing, in the application paragraph, it just says, "If you find that he was intoxicated by not having the normal use of mental and physical," it doesn't allow them to find "or having an alcohol concentration of more than .08."

[*State's Counsel #2*]: Your Honor, I don't believe it's alleged in the indictment.

[*State's Counsel #1*]: Yeah, but I'd rather --

THE COURT: You'd rather go with the other one, right?

[*State's Counsel #1*]: Yeah, if we're going to do it, I'd rather go with the other one, right?

*(Off the record with co-counsel.)*

7

*THE COURT:* So I'm going to change that to say on the 9th day of October in the Circuit Court of Kendall County driving under the influence on the 15th day of November. I'm just changing the 2015 to 2012, November 15th, 2012.

I'm just going to interline here.

What is -- today is the 14th?

[*Defense Counsel*]*:* Yes.

*THE COURT:* 12/14/2021, okay. So I amended the indictment to say on the 15th day of November, struck through 2015, wrote in 2012, put my -- I probably should have not put my initials under here. I put my initials there, is that okay? You said you'd --

[*State's Counsel #1*]*:* I think that's okay, Your Honor.

[*Defense Counsel*]*:* Yes.

*THE COURT:* And I put the date up here 12/14/2021, so by agreement of the parties, the [c]ourt allowed a trial amendment to allege the second DWI, 15th day of November, 2012, in cause number -- kept the same cause number, because it's the one in DuPage.

Do you say that DuPage or DuPage? (Pronouncing.)

[*APPELLANT*]*:* DuPage.

*THE COURT:* DuPage. That is the right one, right? Yeah, DuPage.

Okay. And again, for the record, [defense counsel], while I say your name a hundred different ways, too, you agree --

[*Defense Counsel*]*:* I agree to the trial amendment.

After the discussion, the trial court simply struck through the 2015 reference from the indictment's allegation of the second conviction, interlined "2012," and initialed the change.

## III. Analysis

### A.  We set forth our understanding of Appellant's arguments.

We tease out what we interpret to be Appellant's arguments from his brief that interweaves the arguments between his two points of error:

(1) The trial court's act in raising the variance demonstrated bias;

(2) The trial court's act prejudiced Appellant because, without it, the discrepancy would have created a fatal variance between the allegations of the indictment and the State's proof; and

(3) Even with the variance corrected by the trial amendment, the State's proof that Appellant carried the prior convictions still failed because the State failed to prove the proper sequence of the prior convictions.

We will discuss the arguments raised and will not try to sort out which argument relates to which point of error.  In the end, we disagree with Appellant on all counts.

### B.  The trial court's acts and statements do not reveal judicial impropriety constituting bias.

Appellant attempts to dramatize the trial court's actions with the following sport's analogy:

> This is like a football game third down and the referee se[t]s the ball on the 6½ yard line and it must be on the 6 yard line to get a first down.  In this case, the referee (trial court) spotted the ball not on the true spot but on the 6 yard line.  The referee in this case gave the advantage to the State because without that, the State would not have been able to prove one of the elements of the crime.  The trial court even admitted that it did not really know its[] obligation in this case.

The analogy ignores both that the trial court was acting in a proper role to manage the presentation of the evidence and that the trial court's reluctance to raise the issue indicates neither favoritism to the State nor antagonism to Appellant.

We begin with the same given that Appellant does: "[d]ue process requires a neutral and detached hearing body or officer." *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). A trial court "should not act as an advocate or adversary for any party." *Johnson v. State*, 452 S.W.3d 398, 405 (Tex. App.—Amarillo 2014, pet. ref'd). But we operate under a presumption that the trial court's actions are presumed correct, and that presumption may be overcome only by a *clear* showing of bias. *Brumit*, 206 S.W.3d at 645. To reverse a judgment on the ground of improper conduct or comments of the judge, there must be a twin showing (1) that judicial impropriety was in fact committed and (2) that probable prejudice resulted to the complaining party. *Johnson*, 452 S.W.3d at 405. "In determining on appeal whether a clear showing of bias has been made, we review the entire record." *McDaniel v. State*, No. 05-15-01086-CR, 2016 WL 7473902, at *4 (Tex. App.—Dallas Dec. 29, 2016, pet. ref'd) (mem. op., not designated for publication).

The Dallas Court of Appeals recently disposed of an argument similar to that made by Appellant—that a trial court acted with prejudice because it prompted the introduction of an exhibit and that such act demonstrated that "the judge acted as an 'adversarial advocate for the State.'" *Graves v. State*, Nos. 05-19-00786-CR, 05-19-00788-CR, 2021 WL 1558740, at *1–2 (Tex. App.—Dallas Apr. 21, 2021, no pet.)

(mem. op., not designated for publication). *Graves* articulated the standard for establishing bias when the trial court acted on the basis of events that occurred while it presided over a matter; that standard requires proof beyond a party's speculation that the trial court harbored a bias:

> Where no extrajudicial information was considered, predispositions formed by a judge on the basis of facts or events occurring in the course of the proceedings cannot be characterized as judicial bias unless the deep-seated favoritism or antagonism is so extreme as to display a clear inability to render a fair judgment. *Gaal v. State*, 332 S.W.3d 448, 454 (Tex. Crim. App. 2011) (citing *Liteky v. United States*, 510 U.S. 540, 555[, 114 S. Ct. 1147, 1157] (1994)). There is no showing of "deep-seated favoritism or antagonism that would make fair judgment impossible" where facts offered to show judicial bias did not offer any indication of what was going through a trial judge's mind and instead were based upon appellant's speculation as to what the judge was thinking. *See* [*id.*] at 458–59.

*Id.* at *2.

*Graves* also noted the trial court's role in controlling the presentation of evidence and why exercising that role is not a demonstration of bias:

> A trial judge has broad discretion in maintaining control and expediting the trial. *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). A judge can lawfully provide guidance and manage presentation of evidence from the bench without abandoning her role as an independent arbiter. *Strong v. State*, 138 S.W.3d 546, 552 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.).

*Id.*; *see also Rocha v. State*, 464 S.W.3d 410, 420 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (op. on reh'g) ("A trial judge has broad discretion in maintaining control and expediting a trial and may interject to clarify a point of confusion.").

11

Here, the trial court noted a discrepancy in the proof that it detected as the evidence was presented. In doing so, it acted to exercise the type of guidance in managing the presentation of evidence that comes with the job. We quoted the entire exchange between the trial court and the attorneys to demonstrate the confusion that occurred when a Texas court tried to sort out the judicial process used in Illinois. Again, we do not view the exchange as an attempt by the trial court to act as a prosecutor in a robe but as an effort to sort out an evidentiary issue.

More importantly, the trial court's words do not reveal a "deep-seated favoritism or antagonism that would make fair judgment impossible." *See Graves*, 2021 WL 1558740, at *2. Indeed, the trial court's words demonstrate a hesitancy to even raise the issue. Appellant seeks to transform this hesitancy into a confession that the trial court understood the prejudicial effect of its actions. We view it differently. The trial court saw a discrepancy in the presentation of evidence and appeared almost reluctant to point it out because, in the trial court's words, "Frankly, I don't know what my obligation is here . . . ." If anything, these words reveal the trial court's concern that it wanted to avoid an appearance of what might be considered an expression of a bias. Such self-confession reveals conscientiousness rather than favoritism or antagonism.

Though Appellant references no other action by the trial court that he argues shows a bias, we have reviewed the entire record. We see nothing in the record indicating bias. The trial court appears to have ruled without favoritism in sustaining

12

and overruling objections. On one occasion, the trial court even gave an additional explanation to the parties regarding why a particular ruling was made. We also note that the trial court showed particular compassion to Appellant's wife when she testified during the punishment phase.

The trial court's performance of its duties—to provide guidance and manage the presentation of evidence—is not a demonstration of favoritism to the State or antagonism to Appellant necessary to establish bias.

## C. Appellant was not prejudiced by the trial court's actions even if they had evidenced bias.

Another premise that carries through Appellant's arguments is that the trial court's actions saved the State from a fatal variance between the allegation in the indictment and its proof. Apparently, it is on this premise that Appellant bases his claim of prejudice from the trial court's allegedly biased actions. But even if the trial court had not allowed a trial amendment that corrected the year that one of the prior convictions had occurred, the variance between the indictment's allegation of the date and the actual date would not have been fatal to the State's case.

This year, the Corpus Christi–Edinburg Court of Appeals dealt with the question regarding whether a typographical error in the listing of cause numbers for prior convictions alleged to enhance a DWI might constitute a fatal variance between an indictment and the proof. *Macdonald v. State*, No. 13-22-00123-CR, 2023 WL 2319363, at *5 (Tex. App.—Corpus Christi—Edinburg Mar. 2, 2023, no pet.) (mem.

op., not designated for publication). *Macdonald* reached this question as support for its holding that even if the trial court had denied a trial amendment to correct a cause number, there would not have been a fatal variance between the indictment and the proof; thus, the granting of the trial amendment, even if in error, was not harmful. Relevant to our discussion was the Corpus Christi–Edinburg court's citation to opinions from the Texas Court of Criminal Appeals holding that an error in stating the cause number of a prior conviction did not create a fatal variance:

> We note that, even if the trial court had sustained [appellant's] objection and disallowed the amendment, the evidence adduced at trial—which showed that the cause number for the 2010 Tarrant County judgment was "1211276"—would have been sufficient to support conviction on the original indictment. *See Human v. State*, 749 S.W.2d 832, 839 (Tex. Crim. App. 1988) [(op. on reh'g)] (finding no fatal variance where felony DWI indictment alleged appellant was previously convicted in cause number "F-80-1197-MN" but evidence showed conviction in cause number "F80–11997N"); *Cole v. State*, 611 S.W.2d 79, 82 (Tex. Crim. App. [[Panel Op.]] 1981) (finding no fatal variance where indictment alleged appellant was previously convicted in cause number "87954" but evidence referred to cause number "87594"; and noting that "[w]hen all the other proof supports the allegations which are otherwise sufficient, a transpositional error in the cause numbers would not prevent a defendant from finding the record of the prior conviction and presenting a defense").

*Id.* In other words, not every picayune variance between the description of a conviction in an indictment and the proof of that conviction creates a fatal variance.[1]

---

[1]*Macdonald* also held that the trial amendment did not violate Article 27.11 of the Code of Criminal Procedure when the appellant was not accorded ten additional days to file written pleadings after the filing of the trial amendment. 2023 WL 2319363, at *4. The appellant had merely objected to the trial amendment and did not articulate any statutory basis for the objection or request a continuance or

In a slightly different context, our court has previously held that a variance in the allegation of the date of a conviction is not fatal. Though dealing with an enhancement for punishment, we applied the principal that an error in an alleged date is not fatal because

> [t]he incorrect date would not have prevented [appellant] from finding the record and presenting a defense. *Simmons v. State*, 288 S.W.3d 72, 80 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("A variance in dates of conviction is not fatal when there is no surprise or prejudice to the defendant."); *Mims v. State*, No. 06-09-00160-CR, 2010 WL 780176, at *4 (Tex. App.—Texarkana Mar. 9, 2010, no pet.) (mem. op., not designated for publication) ("The only variance was in the date of conviction . . . . The variance did not result in [appellant's] inability to know what the charges against him were so that he was unable to prepare a defense."); *Benton v. State*, 770 S.W.2d 946, 947–48 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd) ("[T]he discrepancy between the date in the allegation and the date in the State's proof is not fatal."); *Davis v. State*, 684 S.W.2d 201, 210 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd) ("The indictment's incorrect allegation of the date of final conviction for the prior offense would not have prevented the appellant from finding the record of it and presenting a defense."). Because the date variance here is not material and did not prejudice [appellant's] substantial rights, it is not fatal. *See Gollihar*[ *v. State*], 46 S.W.3d [243,] 257 [(Tex. Crim. App. 2001)].

*Slaughter v. State*, No. 02-14-00311-CR, 2015 WL 3917824, at *4 (Tex. App.—Fort Worth June 25, 2015, no pet.) (mem. op., not designated for publication).

---

additional time to prepare. *Id.* *Macdonald* concluded that "[u]nder these circumstances, where no 'affirmative request for the allowed statutory time' was made, . . . [appellant] did not formally or informally invoke [A]rticle 27.11." *Id.* (citing *Oliver v. State*, 646 S.W.2d 242, 245 (Tex. Crim. App. [Panel Op.] 1983)). Here, not only did Appellant's counsel not seek additional time, but he also agreed to the trial amendment and explicitly waived the ten-day period specified in Article 27.11. Thus, there can be no error from granting the trial amendment in and of itself.

Appellant does not distinguish, acknowledge, or even cite the cases we quoted in *Slaughter* or any cases similar to them. Thus, he offers no challenge to the principle that when an indictment's error in describing a prior conviction does not prevent a defendant from finding the record of the conviction and presenting a defense to it, there is not a fatal variance between the allegations of the indictment and the proof of a prior conviction.

Instead, Appellant supports his argument—that the variance is fatal—with authority that is inapposite. First, he cites *Bledsoe v. State*, 480 S.W.3d 638, 640–41 (Tex. App.—Texarkana 2015, pet. ref'd). But *Bledsoe* involved a situation in which a punishment range was improperly enhanced based on a state-jail felony conviction that was legally incapable of supporting the enhancement and not some minor variance between the allegations of the indictment and the proof. *Id.* The other case Appellant cites involved an indictment that alleged the date of an offense that occurred outside the limitations period and the principle that such an indictment is void unless the indictment also alleged grounds to toll limitations. *Jackson v. State*, 489 S.W.2d 565, 567 (Tex. Crim. App. 1972) (op. on reh'g). How that principle applies to our facts is also unexplained by Appellant.

In essence, Appellant's premise is that the scale of the assistance that the trial court gave to the prosecution shows that the trial court must have acted with bias and that he was prejudiced by the assistance because it helped the prosecution out of a

16

situation when its proof would have been fatally at variance with the allegations of the indictment. Appellant's premise is simply wrong.

**D.** **Appellant's argument—that the State did not prove a proper sequence of his prior convictions—is based on authority that is not applicable to the statute under which he was convicted.**

In an argument embedded in his second point, Appellant argues that no matter the trial amendment correcting the date of a prior conviction alleged in the indictment, the State's proof was lacking that Appellant's first Illinois conviction was final before the second occurred, i.e., the State failed to prove the proper sequence of the convictions. He specifically argues that

> the judgment failed to meet the criteria for enhancement of the offense because the first judgment failed to provide the final holding prior to the date the second offense was committed. So even if[] this honorable court holds that the trial court did not [err] in pointing out the date issue in the indictment, and allowing a trial amendment, the State failed to prove all elements required for the offense to be enhanced to a felony offense.

To support this argument, Appellant relies on authority dealing with a different statute than Section 49.04(b) of the Penal Code—under which he was convicted—and ignores long-standing authority from the Court of Criminal Appeals holding that the language of that statutory subsection does not require proof of the sequence of the convictions.

Appellant cites an opinion from the Waco Court of Appeals that sets forth the State's burden to prove the proper sequence of convictions when using those convictions to enhance punishment under Penal Code Section 12.42. *See Guajardo v.*

17

*State*, 622 S.W.3d 439, 441 (Tex. App.—Waco 2020, pet. ref'd) (mem. op., not designated for publication). The glaring problem with Appellant's reliance on *Guajardo* is its inapplicability to the present case because unlike Section 12.42, the State does not carry the burden to prove a sequence when the prior convictions are used to enhance a DWI under Section 49.09(b). In 1999, the Court of Criminal Appeals detailed why the language of Section 49.09(b) does not require proof of the sequence of convictions while Section 12.42 does:

> Section 49.09(b) expressly states that the State must prove a defendant committed two prior offenses related to operating a motor vehicle, aircraft[,] or watercraft while intoxicated. The statute's language is clear and unambiguous. Section 49.09 requires only a showing that a defendant has been convicted twice before for offenses relating to the operation of a motor vehicle, aircraft[,] or watercraft while intoxicated. In writing this statute, the [Texas] Legislature did not say the convictions had to occur in a specified order[] or that they needed to arise from separate transactions. The [Texas] Legislature expressed only that the State must prove a defendant had two prior convictions for intoxication-related offenses. It is not for this Court to add or subtract from that. *Coit v. State*, 808 S.W.2d 473, 475 (Tex. Crim. App. 1991); *and cases cited therein*.
>
> At the time they passed Section 49.09, the [Texas] Legislature was aware of the language of the habitual[-]offender statute and their requirement that the State must prove "the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final." *See* Tex. Penal Code [Ann.] § 12.42(d). The [Texas] Legislature chose neither to include similar language nor to make reference to Section 12.42(d). This indicates a legislative resolve not to include a sequential requirement in the proof required for showing the prior convictions in Section 49.09(b). *Cf. Jones v. State*, 979 S.W.2d 652, 657 (Tex. Crim. App. 1998) (wherein this Court cited the [Texas] Legislature's decision to not include language from Tex. Code Crim. Proc. [Ann.] art. 13.15 into Article 13.08 as proof of

legislative resolve to not carry forward the language from Article 13.15 into Article 13.08.).

Accordingly, we conclude that Section 49.09(b) does not require the State to prove the prior convictions occurred sequentially. Instead, the State must show a defendant was twice previously convicted for offenses related to operating a motor vehicle, aircraft, or watercraft while intoxicated. This interpretation of the text of Section 49.09(b) should have been plain to the legislators who voted on it. *Boykin*[ *v. State*], 818 S.W.2d [782,] 785 [(Tex. Crim. App. 1991)].

*Gibson v. State*, 995 S.W.2d 693, 696–97 (Tex. Crim. App. 1999) (footnote omitted).

In the intervening twenty-four years since handing down *Gibson*, the Court of Criminal Appeals has repeatedly referenced its holding. We will cite only the most recent examples. *See, e.g.*, *Ex parte Kibler*, 664 S.W.3d 220, 229 (Tex. Crim. App. 2022) ("In *Gibson v. State*, we found that [the language of Section 49.09] only required 'a showing that a defendant has been convicted twice before for offenses relating to the operation of a motor vehicle, aircraft[,] or watercraft while intoxicated.'"); *Ex parte Rodgers*, 598 S.W.3d 262, 267 n.8 (Tex. Crim. App. 2020) (stating that "[t]his Court has held that Section 49.09(b) (pertaining to enhancement of a DWI to felony status) 'does not require the State to prove the prior convictions occurred sequentially'" and citing *Gibson*).

Thus, Appellant's embedded argument that the State failed to prove the proper sequence of Appellant's prior convictions also fails.

19

## IV. Conclusion

We overrule Appellant's two points and affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  June 8, 2023