**Affirm as Modified and Opinion Filed December 1, 2022**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-21-00326-CR**

**NEIL PAUL NOBLE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause No. F18-45998**

## MEMORANDUM OPINION

Before Justices Molberg, Partida-Kipness, and Carlyle
Opinion by Justice Partida-Kipness

Appellant Neil Noble appeals his conviction for stalking. In numerous appellate issues, Noble contends within twelve categories: (1) sufficiency of the evidence; (2) judgment reformation; (3) constitutionality of the stalking statute; (4) denial of a speedy trial; (5) admissibility of evidence; (6) voir dire error; (7) error during closing argument; (8) judicial bias; (9) sufficiency of the indictment; (10) denial of right to self-representation; (11) ineffective assistance of counsel; and (12) cumulative error. We affirm as modified.

# PROCEDURAL HISTORY

Noble was indicted for stalking, a third-degree felony. *See* TEX. PENAL CODE § 42.072(b). The indictment alleged that "on or about and between the 16th day of October, 2018 and the 5th day of November, 2018," Noble knowingly engaged in conduct to "harass, annoy, alarm, abuse, torment, or embarrass" the complainant, Messina Madson, with repeated e-mails, obscene comments, and placing her in "fear of bodily injury or death."

Noble was found incompetent by a jury on December 12, 2018, and again on February 6, 2020. After being committed to a state mental hospital, Noble regained competence. He pleaded not guilty and proceeded to trial. A jury found Noble guilty of the charged offense and, after reaching an agreement with the State, was sentenced to ten years' imprisonment, probated for four years. This *pro se* appeal followed.

# BACKGROUND

Noble was indicted in November 2018 for stalking Messina Madson, a criminal defense attorney. Trial commenced on April 26, 2021. Madson testified that on October 16, 2018, she received a birthday card via Federal Express from Noble. She testified she found the card "weird" because it "read like a personal birthday card, but it didn't make a lot of sense and there was an invitation in it." The birthday card read "Happy Birthday to Someone who's Charming, Intelligent, Great-Looking, and Fun to be around. We're so alike it's frightening!" In the hand-written note inside, Noble said "Dear Messina, Happy Birthday. My dad said I could use his

–2–

Mavericks tickets on November 2 if you want to go with me. I will take you out for breakfast and could be your companion for the day 'friends with benefits.'" He signed the card "Love, Neil." Madson showed the card to her law partner, who recognized the sender's name and told her Noble had been e-mailing her through their law firm website's client contact box.

Between October 16, 2018, and November 5, 2018, Noble e-mailed Madson fifty-one times from his personal e-mail address. Some of the early e-mails, like the birthday card, asked Madson to join Noble on a date. Other e-mails randomly referenced legal cases, news events, or would have case law citations and explanations. Madson testified she had never met Noble or represented him in any legal matter. However, the e-mails had a very familiar tone and seemed like a response to something Madson said. As the e-mails continued, they became more personal, referencing Madson coming to Noble's home, getting a hotel room together, Noble going to Madson's home, hanging drapes at Noble's home and then stating that "D" + "rape = drape," and talking about terrorist attacks, shootings, and bombings. Noble also talked about getting advice from dead people, multiple conspiracy theories involving the Mafia, Russia, former presidents, and how he analyzed numbers.

Madson testified the nature of the e-mails alarmed her so she notified the staff at her office and security in the building about Noble. Noble continued to e-mail her and made reference to the Doubletree Hotel corporate suite, which she testified was

the hotel her office was attached to, and the University of Texas soccer fields, which Madson stated were close to her home. After she received those e-mails, Madson testified her family altered their life, with her children not being allowed to play outside anymore and having to warn her son and her children's schools about Noble.

Madson also contacted the Dallas County District Attorney's Office (DA's Office) to try to get Noble to stop contacting her.[1] Noble's later e-mails referenced how he knew she had contacted the DA's office by stating "I will not voluntarily consent to a 'no-contact' provision with either Messina Madson or Jody Warner [another female attorney]." Additionally, on October 31, 2018, Noble wrote Madson stating, "You made a mistake that needs to be corrected. I will let you take me on a vacation. If you do anything else to make me look bad, I [sic] won't be as patient."

On November 2, 2018, Noble came to Madson's office telling the receptionist, Sarah Dunn, that he was there to take Madson to lunch. Dunn recognized Noble from the picture Madson had provided and notified Taly Haffar, an attorney at the office. Haffar confronted Noble, stated Madson was not at the office, and told Noble he needed to leave. Haffar agreed during his testimony that Noble left without incident but found his behavior odd. Later that day, Noble wrote Madson and stated:

Messina,

Will you let me take you to dinner tonight for your birthday. I can also give you a key. Let me know.

---

[1] Madson was a former prosecutor with the DA's office and still had contacts within the office.

I came by to take you to lunch today but they wouldn't let me in. Maybe he confused a box of condoms (three) for a suicide bomb. The guy reminded me of actor tele sevalias [sic].

I am at the law library. There is an annotation on competency to stand trial in the same casebook as dusky, 362 u.s. [sic].

Love,

Neil noble [sic]
November 2, 2018.

Madson testified that this e-mail was "really scary" because she knew Noble had just been at her office.

I'm scared and alarmed that this ha[d] escalated way beyond past where it should have, and it's sexual and it's sexual without my participation. It is getting into a sexual fantasy that has a level of familiarity that is not appropriate, not reasonable, not stable. It's just scary.

The emails continued until the following day, November 3, 2018. The last one Noble sent stated:

Messina:

Roy Cohn[2] suggested that I ask you if you are ready for me to come over and give you a good time for your birthday. How many times would you like to have good sex with me tonight? I could probably find your house. Campbell to Coit. Would you open the door if I came over?

. . . .

I would rather have sex with you than fight with you, but that's up to you. When is the fun part of your next menstrual cycle? Do you want to practice before then?

---

[2] Roy Cohn was an attorney from the New York area who was famous in the 1950's and involved in the McCarthy hearings. He is deceased.

Happy Birthday!

Love,

Neil Noble
November 3, 2018.

Madson testified she was out of town for her birthday, but received a panicked phone call from her husband on November 4, 2018, because Noble had shown up to their home. Anthony Pampillonia, Madson's husband, testified he was home with their children when the doorbell rang. When he opened the door, Noble was there and asked for Madson. Pampillonia told him no one by that name lived there and closed the door. Pampillonia stated Noble seemed surprised when he opened the door. Pampillonia called 911 as Noble left. After Noble showed up at their home, her family made changes to their home security, notified the police and schools, and had more police patrols in their neighborhood. Madson testified that if she had been home, she believed Noble would have tried to "rape" her.

The jury also heard testimony from Detective Sarah Ye with the Richardson Police Department. Detective Ye testified she reviewed Pampillonia's complaint and the e-mails and birthday card Madson received. Detective Ye also spoke to Noble in a videotaped interview where he claimed ownership of the e-mail address used to send the e-mails to Madson and admitted to sending them. The jury found Noble guilty as alleged in the indictment.

## ANALYSIS

Noble brings eighty-one issues on appeal that we have combined into the following categories: (1) sufficiency of the evidence to support the conviction; (2) judgment reformation; (3) constitutionality of the stalking and harassment statutes; (4) denial of a speedy trial; (5) admissibility of evidence; (6) voir dire error; (7) error during closing argument; (8) judicial bias; (9) sufficiency of the indictment; (10) denial of right to self-representation; (11) ineffective assistance of counsel; and (12) cumulative error. We will address his substantive complaints first.

## I.     Sufficiency of the Evidence

In his first set of issues, Noble challenges the sufficiency of the evidence to support his conviction for stalking. He also alleges the evidence was not sufficient to support a conviction for harassment and there was a variance between the indictment and evidence presented at trial.

We review a sufficiency challenge by considering all of the evidence in the light most favorable to the verdict and determine, whether, based on the evidence and reasonable inferences therefrom, a rational jury could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318—19 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We examine all the evidence in the light most favorable to the verdict and determine whether a rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App.

2013). We defer to the fact finder's credibility and weight determinations because the fact finder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *See Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). The fact finder can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liabilities, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of

the offense and those elements "as modified by the indictment." *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

Under the Texas Penal Code, a person commits the offense of stalking if, as relevant here:

> on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:
>
> (1)      constitutes an offense under Section 42.07 [harassment], or that the actor knows or reasonably should know the other person will regard as threatening:
>
> (2)      causes the other person . . . to be placed in fear of bodily injury or death . . . or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and
>
> (3)      would cause a reasonable person to . . . fear bodily injury or death for himself or herself; . . . or feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

TEX. PENAL CODE § 42.072(a).

Section 42.07 defines the offense of harassment. A person harasses another if, "with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person," as relevant here, "initiates communication and in the course of communication makes a comment, request, suggestion, or proposal that is obscene," or "sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." *Id*. § 42.07(a)(1), (7). Section 42.07 also defines "electronic communication" as a

"communication initiated through the use of electronic mail, . . . or an Internet website," and "obscene" as "a patently offensive description of or a solicitation to commit an ultimate sex act, including sexual intercourse . . . ." *Id*.(b)(1)(A), (3).

Noble argues the evidence was not sufficient to support the jury's verdict for stalking. We disagree. The evidence showed that Noble sent over fifty e-mails to Madson in a three-week period. Noble confirmed the e-mail address was his and admitted sending the e-mails to Madson. Madson testified she did not know Noble, was not his attorney at any point in time, and never responded to his communication. Noble escalated the situation by appearing at Madson's office stating he was taking her to lunch and then by showing up at her home. During that time, Madson reached out to the DA's office and requested a no-contact order. Noble's e-mails made clear he was aware of the no-contact order, yet he intentionally continued to reach Madson. Once he was aware of her no-contact request, Noble began making more threatening remarks towards Madson in the e-mails and frequently referenced sexual encounters. Madson stated the e-mails caused her to feel "threatened," "scared," and "alarmed." She also testified she felt like Noble was going to "rape" her.

Additionally, testimony showed that Noble repeatedly referenced having sexual intercourse with Madson. His initial birthday card to her spoke about being "friends with benefits," alluding to sexual encounters. Noble also invited Madson to his home or referred to hotels in the evening multiple times, as well as asking to come to her home. He showed up to her office with a box of condoms stating he was

taking Madson to lunch. Noble also wrote her about having "good sex" for her birthday and when they could "practice." Madson was alarmed by these e-mails and notified her family, co-workers, and children's schools to warn them of Noble. A majority of these requests by Noble came after he was aware of the no-contact order Madson requested. A rationale jury could have found that these repeated requests were alarming to Madson, obscene in nature, and sufficient to support the conviction for stalking.

Noble also challenges the sufficiency of a conviction for harassment. Harassment was presented to the jury as a lesser included offense in the jury charge. To convict for stalking, the jury had to find the elements of harassment present as well. Since we find the evidence was sufficient to support the conviction for stalking, the evidence was sufficient to support the harassment section of the stalking charge.

Noble also claims there was a variance between the indictment and the evidence presented at trial. To assert an issue on appeal, an appellant's brief must contain a "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). An appellant waives an issue on appeal if he does not adequately brief an issue by failing to provide supporting arguments, substantive analysis, and appropriate citations to authorities and to the record. *See id*; *Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011); *see also Chaves v. State*, 630 S.W.3d 541, 555 (Tex. App.— Houston [1st Dist.] 2021, no pet.). An appellate court has no obligation to construct

–11–

and compose issues, facts, and arguments with appropriate citations to authorities and the record for the appellant. *See Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017). A brief that fails to apply the law to the facts does not comport with the Rule 38.1 and presents nothing for our review. *See Swearingen v. State*, 101 S.W.3d 89, 100 (Tex. Crim. App. 2003). Noble did not provide this Court with substantive argument, analysis, or apply the law to the facts in this issue. Therefore, we find he waived this issue.

The evidence was sufficient to support the jury's verdict for stalking. Noble's e-mails caused Madson to be "alarmed" and in fear of bodily injury. We overrule Noble's issues regarding the sufficiency of the evidence.

## II.    Constitutionality of the Tex. Penal Code Sections 42.07 and 42.072

In seven issues, Noble challenges the constitutionality of sections 42.07 and 42.072 stating they are vague and overbroad. He alleges the trial court judge erred by denying his motion to quash the indictment on the ground the statute was unconstitutional. He also argues sections 42.07 and 42.072 are vague and overbroad both on their face and as applied to Noble. He states sections 42.07 and 42.072 implicate First Amendment free speech protection because they seek to regulate speech. Noble also argues the term "solicitation" in section 42.07 is vague and overbroad.

When a party challenges a statute as both overbroad and vague, a court of appeals must first consider the overbreadth challenged. *Ex parte Nuncio*, 579 S.W.3d

448, 453 (Tex. App.—San Antonio 2019), *aff'd*, No. PD-0478-19, 2022 WL 1021276 (Tex. Crim. App. Apr. 6, 2022); *Ex parte Paxton*, 493 S.W.3d 292, 304 (Tex. App.—Dallas 2016, pet. ref'd). "The First Amendment doctrine of substantial overbreadth is an exception to the general rule that a person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may be unconstitutionally applied to others." *Ex parte Barton*, —S.W—.—, PD-1123-19, 2022 WL 1021061, at *2 (Tex. Crim. App. April 2, 2022) (quoting *Massachusetts v. Oakes*, 491 U.S. 576, 581 (1989)). The overbreadth doctrine "is strong medicine that is used sparingly and only as a last resort." *Nuncio*, 579 S.W.3d at 453 (quoting *State v. Johnson*, 475 S.W.3d 860, 865 (Tex. Crim. App. 2015)). To qualify as unconstitutionally overbroad, "the statute must prohibit a substantial amount of protected expression and the danger that the statute will be unconstitutionally applied must be realistic and not based on 'fanciful hypotheticals.'" *Id*. at 453–54 (quoting *United States v. Stevens*, 559 U.S. 460, 485 (2010)). Laws restricting the exercise of rights under the First Amendment are facially overbroad only if the impermissible applications of the law are real and substantial when judged in relation to the statute's legitimate sweep. *Id*. at 454. "[O]utside the limited First Amendment context, a criminal statute may not be attacked as overbroad." *Barton*, 2022 WL 1021061, at *2 (quoting *Schall v. Martin*, 467 U.S. 253, 268 n.18 (1984)). Appellate courts should uphold a challenged statute if it can ascertain a reasonable construction that renders it constitutional. *Nuncio*, 579 S.W.3d at 454.

Generally, "in addressing a vagueness challenge," courts are to "consider whether the statute is vague as applied to a defendant's conduct before considering whether the statute may be vague as applied to the conduct of others." *Barton*, 2022 WL 1021061, at *2 (quoting *Wagner v. State*, 539 S.W.3d 298, 314 (Tex. Crim. App. 2018). "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." *Id.* (internal quotations omitted).

This general rule gives way when freedom of speech under the First Amendment is involved. *Barton*, 2022 WL 1021061, at *3. "[W]hen a vagueness challenge involves First Amendment considerations, a criminal law may be held facially invalid even though it may not be unconstitutional as applied to the defendant's conduct." *State v. Doyal*, 589 S.W.3d 136, 144 (Tex. Crim. App. 2019) (internal quotations omitted). A law implicating First Amendment freedoms may be found facially vague without "a showing that there are no possible instances of conduct clearly falling within the statute's prohibitions." *Id.* at 145.

The court of criminal appeals in their recent decisions in *Barton*, 2022 WL 1021061, at *1, and *Ex parte Sanders*, ——S.W.3d—, —, 2022 WL 1021055, at *1 (Tex. Crim. App. April 6, 2022), have addressed similar issues to Noble's complaints. In *Barton*, the Court held that section 42.07(a)(7), the electronic harassment statute, "fails to implicate the First Amendment's freedom of speech

–14–

protections because it . . . prohibits non-speech conduct." 2022 WL 1021061, at *1. It found that the holding in *Scott v. State*, 322 S.W.3d 662 (Tex. Crim. App. 2010), *disavowed on other ground by Wilson v. State*, 448 S.W.3d 418, 423 (Tex. Crim. App. 2014), applied to Section 42.07(a)(7) as well as Section 42.07(a)(4) because both involve non-speech conduct that does not implicate the First Amendment. *Barton*, 2022 WL 1021061, at *6. It also held that "sending repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend would indeed invade the substantial privacy interest of another in an essentially intolerable manner." *Id.* at *7; *Sanders*, 2022 WL 1021055, at *3. As for whether the statute is unconstitutionally vague because Section 42.07(a)(7) does not regulate speech and therefore "does not implicate the free-speech guarantee of the First Amendment," Noble, like the appellant in *Barton*, "in making his vagueness challenge to that statutory subsection, was required to show that it was unduly vague as applied to his own conduct." *Barton*, 2022 WL 1021061, at *7. Noble has not done that and, therefore, his vagueness challenge fails. Additionally, because the Court held that First Amendment speech protections do not apply under this section, Noble's overbreadth challenges fail as well.

Although this Court previously decided in *Griswold v. State (Griswold I)*, 637 S.W.3d 888 (Tex. App.—Dallas 2021, pet. filed), that section 42.072(a) was "facially unconstitutional for vagueness and overbreadth to the extent that it

–15–

incorporates section 42.07(a)(7)," that decision has been overruled. *Griswold v. State (Griswold II)*, —S.W.3d—, —, 2022 WL 16626079, at *1 (Tex. Crim. App. Nov. 2, 2022) (mem. op.). In *Griswold II*, the court of criminal appeals reversed and remanded *Griswold I* back to this Court for further consideration because we did not have the benefit of *Barton* and *Sanders*, which "upheld the facial constitutionality of a previous version of section 42.07(a)(7)." *Griswold II*, 2022 WL 16626079, at *1. Noble's arguments rely heavily on *Griswold I*, which has now been overruled. Therefore, based on the recent decisions out of the court of criminal appeals, Noble's arguments fail to the extent they rely on *Griswold I*.

Noble also challenges whether "solicitation" is vague or overbroad. However, he failed to adequately brief this issue. To assert an issue on appeal, an appellant's brief must contain a "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). An appellant waives an issue on appeal if he does not adequately brief an issue by failing to provide supporting arguments, substantive analysis, and appropriate citations to authorities and to the record. *See id*. We find this issue to be waived.

## III. Speedy Trial Complaint

In fourteen issues related to speedy trials, Noble argues the trial court committed error by not granting his motion for speedy trial.

The Sixth Amendment to the United States Constitution guarantees the accused in a criminal prosecution the right to a speedy trial. *State v. Lopez*, 631

S.W.3d 107, 113 (Tex. Crim. App. 2021). The Texas Constitution has the same guarantee. *Id*. An evaluation of a speedy trial claim includes a consideration of "the length of delay, the reasons for delay, to what extent the defendant has asserted his right, and any prejudice suffered by the defendant." *Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017) (citing *Barker v. Wingo*, 407 U.S. 514, 530-32, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). Moreover, "[t]he length of delay is, to some extent, a triggering mechanism, so that a speedy trial claim will not even be heard until passage of a period of time that is, on its face, unreasonable in the circumstances." *Dragoo v. State*, 96 S.w.3d 308, 313 (Tex. Crim. App. 2003).

We apply a bifurcated standard of review: an abuse of discretion standard for the factual components and a de novo standard for the legal components. *Lopez*, 631 S.W.3d at 113–114. While an evaluation of the *Barker* factors includes fact determinations and legal conclusions, "the balancing test as a whole is a purely legal question that we review *de novo*." *Id*. at 114 (quoting *Balderas v. State*, 517 S.W.3d 756, 767–68 (Tex. Crim. App. 2016). Because Noble did not request findings of fact and conclusions of law, we imply all findings necessary to support the trial court's ruling if those findings are supported by the record. *See Balderas*, 517 S.W.3d at 767–68.

a. Length of Delay

The first factor requires us to measure the delay from the time the defendant was formally accused or arrested until the time of trial. *Lopez*, 631 S.W.3d at 114.

–17–

There is "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." *Barker*, 407 U.S. at 523. Indeed, the length of delay that will provoke an inquiry into the speedy trial factors "is necessarily dependent upon the peculiar circumstances of the case." *Zamorano v. State*, 84 S.W.3d 643, 648-49 (Tex. Crim. App. 2002) (quoting *Barker*, 407 U.S. at 530-31). Deliberate delay to hamper the defense weighs heavily against the State, while more neutral reasons like negligence or overcrowded courts weigh against the State but less heavily. *Hopper*, 520 S.W.3d at 924.

Although "[t]here is no set time element that triggers the analysis," *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008), generally, a delay of eight months to a year, or longer, is presumptively prejudicial and triggers a speedy trial analysis. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003); *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992).

Noble was arrested on November 7, 2018, and indicted on November 13, 2018, for stalking. A month later, he was found incompetent by a jury and committed to a state hospital facility to attempt to regain competency. In February 2019, Noble filed a *pro se* motion for speedy trial. In May 2019, Noble's commitment was extended because he was still determined to be incompetent to stand trial. In October 2019, the hospital determined Noble was competent to stand trial and the trial court restored his competency. On October 30, 2019, the trial court ordered a second competency evaluation. On November 12, 2019, Noble filed another *pro se* motion

for speedy trial. In February 2020, a second competency trial was held, and Noble was again found to be incompetent by a jury. He was re-committed to a state hospital facility. In October 2020, Noble filed a *pro se* motion to dismiss due to speedy trial violations. Also in late October 2020, the hospital submitted an evaluation that Noble's competency was restored. In November 2020, Noble filed another *pro se* motion for speedy trial. The trial court restored his competency in January 2021. In March 2021, Noble requested a speedy trial and dismissal for denial of his speedy trial rights. Trial commenced in April 2021.

The timeline shows there was a substantial delay between the date of arrest and the date of trial. The delay was sufficient to trigger analysis under the *Barker* factors.

b.    Reasons for the Delay

Once the length of time is found to be possibly prejudicial, the burden on justifying the delay falls to the State. *Cantu*, 253 S.W.3d at 280. Deliberate delays weigh heavily against the State, while more neutral reasons weigh less heavily. *Barker*, 407 U.S. at 531; *Zamorano*, 84 S.W.3d at 649. Valid reasons are not weighed against the State at all. *Barker*, 407 U.S. at 531; *State v. Munoz*, 991 S.W.2d 818, 824 (Tex. Crim. App. 1999). Caselaw is clear that delays related to competency evaluations do not count against the State. *Lopez*, 631 S.W.3d at 112; *see Hull v. State*, 699 S.W.2d 220, 221–22 (Tex. Crim. App. 1985).

Here, shortly after Noble was arrested, he was deemed incompetent. After an extension and second commitment for incompetency, he was finally deemed competent in January 2021. Trial was held in April 2021 and Noble's was the first criminal trial held in Dallas County following the Covid-19 pandemic.

No portion of the delay should be held against the State. It filed one continuance prior to trial because Madson was unavailable, but the continuance was denied. Trial proceeded as scheduled. These factors weigh in favor of the State.

c.     Noble's Assertion of his Speedy Trial Rights

Noble asserted his right to a speedy trial multiple times. However, three of those motions were filed while he was deemed incompetent and committed to a state hospital facility. If the court determines there is evidence to support a finding of incompetency, "all other proceedings in the case" shall be stayed, other than acting on the State's motion to dismiss. TEX. CODE CRIM. PROC. art. 46B.004(d), (e); *see State v. Suarez*, No. 08-17-00060-CR, 2018 WL 4178460, at *4 (Tex. App.—El Paso Aug. 31, 2018). Therefore, those motions should be considered stayed, and we will only consider motions after Noble regained competency. His trial counsel filed a motion for speedy trial in March 2021, and Noble filed a *pro se* motion to dismiss days after. His trial commenced on April 26, 2021. Because we have already determined that the time he spent awaiting competency evaluations and treatment do not count towards the determination of any speedy trial violation, only a period of

about three and a half months passed between competency being restored and trial. Therefore, this factor weighs in favor of the State.

    d.    <u>Prejudice to Noble</u>

Even though time passed between Noble's arrest and trial, he fails to show how he was prejudiced by the State's actions. Noble was arrested and found incompetent to stand trial shortly after. He was committed to a state hospital facility to regain competency. Although the State requested a short continuance prior to trial, it was denied and the State proceeded to trial. There was no prejudice to Noble for a speedy trial violation. We overrule Noble's issues relating to his speedy trial complaint.

Additionally, under his "Issues Presented" section, Noble raises multiple complaints about his competency hearings. Noble did not provide this Court with substantive argument, analysis, or apply the law to the facts in these issues. Therefore, we find his issues regarding his competency hearings are waived. *See* TEX. R. APP. P. 38.1(1); *see also Wolfe*, 509 S.W.3d at 343; *Lucio*, 351 S.W.3d at 896—97; *Swearingen*, 101 S.W.3d at 100.

## IV.    Ineffective Assistance of Counsel

Noble alleges his trial counsel was ineffective. His argument about this issue is stated in four sets of questions. Specifically, he asks whether trial counsel's performance made it "less likely that he would be found not guilty or only found guilty of the lesser offense of harassment" and if trial counsel's performance had an

effect on sentencing. Noble also argues that trial counsel's "rude comment" about a former client of Madson's constituted a "single egregious error justifying reversal." Finally, he states trial counsel should have investigated his preferred defense and he did not fully understand the plea agreement based on trial counsel's explanation.

To prevail on a claim of ineffective assistance of counsel, the appellant must meet a two-pronged test established in *Strickland v. Washington*. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing *Strickland*, 466 U.S. 668, 686 (1984)). Appellant must show (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Id*. Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective. *Id*. In order to satisfy the first prong, appellant must prove, by a preponderance of the evidence that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. To prove prejudice, appellant must show there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Id*.

An appellate court must make a "strong presumption that counsel's performance fell within the wide range of reasonably professional assistance." *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in

–22–

retrospective speculation. *Thomas v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). When such direct evidence is not available, we will assume counsel had a strategy if any reasonably sound strategic motivation can be imagined. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). In making an assessment of effective assistance of counsel, an appellate court must review the totality of the representation and the circumstances of each case without the benefit of hindsight. *Lopez*, 343 S.W.3d at 143.

In the rare case in which trial counsel's ineffectiveness is apparent from the record, an appellate court may address and dispose of the claim on direct appeal. *Id*. However, this is a difficult hurdle to overcome: the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning. *See Strickland*, 466 U.S. at 690.

Noble argues trial counsel did not understand the law regarding stalking and instead of "recognizing the State didn't prove its case, [trial counsel] took a hostile approach on cross-examination of Madson." Noble feels that tactic "alienated the jury." Noble makes statements in his briefs regarding what trial counsel did, without

showing how the conduct was so "outrageous" that no attorney would have proceeded in the same manner. He also argues trial counsel did not properly explain the plea agreement to him and his sentencing should be void. Without a chance to respond to Noble's allegations, we do not know what occurred between Noble and trial counsel regarding the sentencing plea agreement.

"Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Trial counsel "should ordinarily be afforded an opportunity to explain [her] actions before being denounced as ineffective." *Id*. Here, trial counsel was not given a chance to respond to these allegations. Based on the record before us, we find the challenged conduct was not "so outrageous that no competent attorney would have engaged in it." *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (quoting *Goodspeed*, 187 S.W.3d at 392).

Noble has not shown trial counsel's actions were "so outrageous that no competent attorney would have engaged in it." *Id*. His four issues relating to ineffective assistance of counsel are overruled.

## V. Admissibility of Evidence

By multiple issues, Noble alleges the trial court erred by admitting certain pieces of evidence: the e-mails he sent to Madson, his videotaped statement with Richardson Police, and the birthday card he sent Madson. He also argues Detective Ye's opinion regarding the charges brought against Noble was inadmissible.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Id.* at 83. Before a reviewing court may reverse a trial court's evidentiary ruling, it must conclude that the trial court's ruling "was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008)).

Whether to admit a particular piece of evidence is a preliminary question to be determined by the trial court. *See* TEX. R. EVID. 104(a) ("The court must decide any preliminary question about whether . . . evidence is admissible."); *Tienda v. State*, 358 S.W.3d 633, 637–38 (Tex. Crim. App. 2012). For evidence to be admissible, it must be relevant. A key component of relevance is authentication: "Evidence has no relevance if it is not authentically what its proponent claims it to be." *Tienda*, 358 S.W.3d at 638. Authentication is a condition precedent to the admissibility of evidence and requires the proponent of the evidence to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901; *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015). Evidence can be authenticated by appearance, content, substance, internal patterns, or other distinctive characteristics, including direct or circumstantial evidence. *Hines v. State*, 608 S.W.3d 354, 365 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

The ultimate question of whether a particular item of evidence is what its proponent claims is a question for the fact finder. *Tienda*, 358 S.W.3d at 638. As part of its gate-keeping function, the trial court's preliminary question is to decide whether the proponent of the evidence has supplied facts to support a reasonable jury determination that the evidence proffered is authentic. *Id*. If the trial court's ruling that the jury could find the evidence authentic is "within the zone of reasonable disagreement," we should not interfere and reverse the ruling. *Id*.; *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007) ("The trial judge does not abuse his or her discretion in admitting evidence where he or she reasonably believes that a reasonable juror could find that the evidence has been authenticated or identified.").

Noble first objects to the admission of the e-mails he sent Madson into evidence. As the State introduced the e-mails, Noble's counsel objected on Rule 404(b) grounds and attorney-client privilege grounds. *See* TEX. R. EVID. 404(b). On appeal, Noble now argues the e-mails were not properly authenticated under Rule 901. *See id*. R. 901. The objection raised on appeal must comport with the objection raised at trial; otherwise, nothing is preserved for appellate review. *See* TEX. R. APP. P. 33.1; *see Gibson v. State*, 541 S.W.3d 164, 166 (Tex. Crim. App. 2017). Because Noble's current issue is not on the same grounds his trial counsel raised, we find this issue is waived.

Noble next argues his videotaped interview should not have been admissible. Noble's argument, outside of some brief facts and a "legal standard" states "Noble

would not have given a statement if there had not been the pressure of competency proceedings. Noble's statement was not 'voluntary' and the tape should be permanently excluded." To assert an issue on appeal, an appellant's brief must contain a "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Additionally, Noble also argues the birthday card he sent to Madson should be excluded because Detective Ye did not bring the original to court and the card was not "mentioned in the indictment." Noble also does not adequately brief either of these arguments. *See* TEX. R. APP. P. 38.1(i). We do not have an obligation to construct and argue Noble's issues for him. *See Wolfe*, 509 S.W.3d at 343. We find that these issues were not preserved and are therefore, waived.

He also challenges Detective Ye's opinion testimony regarding the stalking charge. His trial counsel did not object to the State's questioning of Detective Ye. To preserve an issue, Noble must timely object before the trial court and receive an adverse ruling. *See* TEX. R. APP. P. 33.1(a). Noble did not object and therefore no issue was preserved. This issue is overruled.

In his "Issues Presented" section of his brief, Noble also lists nine additional issues related to the pieces of evidence addressed above. However, outside of listing these issues, Noble does not address them any further in his brief or supplemental briefs. Therefore, we will not address those issues and deem them inadequately briefed and waived. *See* TEX. R. APP. P. 38.1(I).

## VI. Voir Dire

Noble alleges in six issues that the trial court erred during voir dire. He states the trial court inappropriately dismissed Jurors 3, 26, and 28, the jury was organized to "convict" him, the State committed error by raising a Texas Tech coffee cup, Juror 45 was "planted" on the jury, and the State conducted a "mock trial" to exclude jurors who were "skeptical of his case."

Following voir dire, the attorneys presented their challenges for cause to the trial court. When Juror 3's number came up, the following discussion occurred:

| | |
|---|---|
| Trial Court: | No. 2, can't be fair. 3, I made a terrible mistake. |
| Trial Counsel: | No problem. |
| Trial Court: | I thought we were talking about a different person. And then 5– |
| State: | No 3? |
| Trial Counsel: | Yeah, [the trial court] accidentally dismissed 3. |
| Noble: | I liked him. |
| Trial Counsel: | It happens. No. 4? |
| | . . . . |
| Trial Court: | And to be fair, [Juror 3] was the person who said his sister, mother, and all those people had that kind of problem. |
| Trial Counsel: | Yeah. And he had a juvenile conviction. He was on his way out. |

Although the trial court accidentally excused Juror 3, trial counsel did not object and even agreed he would have been dismissed. Juror 28 was excused from the jury based on her statements during voir dire that she would have difficulty with this particular type of case, as well as having a scheduling issue. There was no objection by trial counsel. These alleged errors were not preserved for review. *See* TEX. R. APP. P. 33.1(a).

Juror 26 was questioned individually and the record does not show that Juror 26 was struck for cause. Therefore, the trial court did not err because it did not excuse Juror 26 for cause. Additionally, Noble does not adequately brief his issue regarding Juror 26. Therefore, we find his issue was waived. *See* TEX. R. APP. P. 38.1(i).

Noble also argues the State committed error when the prosecutor raised his Texas Tech coffee mug and alleges Juror 45 was "planted" on the jury panel. These issues were also not objected to or adequately briefed. *See id*. In his "Issues Presented" section of his brief, Noble also lists two additional issues related to voir dire. However, outside of listing these issues, Noble does not address them any further in his brief or supplemental briefs. Therefore, we will not address them and deem them inadequately briefed and waived. *See id*.

## VII. Closing Arguments

Noble brings four issues regarding closing arguments in his "Issues Presented" section: the State erred when it misstated the definition of "obscene," the State erred by misstating the number of times Noble asked Madson for sex and

discussed terrorism and Mafia events, and the trial court erred by overruling trial counsel's objection to a part of the State's closing argument.

In his brief, Noble briefly discusses facts from the State's closing argument. In his "Case Law" section, he cites to three cases, but never ties them to the facts he discussed previously nor does he make an argument about how the cases are applicable. This entire section is inadequately briefed and waived. *See id*.; *Swearingen*, 101 S.W.3d at 100.

## VIII. Trial Court's Other Errors and Bias

Noble raises six issues regarding the trial court's supposed errors or bias. He states the trial court erred by excluding Defense Exhibits 1 and 2 and by giving a deficient jury instruction regarding reasonable doubt. He also claims it erred by making statements to the jury about the Dallas Cowboys and Campisi's Restaurant. He additionally asserts he was denied his right to an impartial judge.

In his brief, Noble states he believed the trial court was biased against him and he filed a motion to recuse that was not heard by the trial court. He also wanted to provide the jury with a motion to quash challenging the constitutionality of the harassment statute he filed as Defense Exhibit 1, and with a copy of the opinion in *Ex parte Barton* as Defense Exhibit 2. He alleges the motion to quash would have shown the jury he was seeking to hire Madson as his defense counsel in an unrelated harassment case.

Noble does not direct us to any portion of the record that indicates he made a request, objection, or motion based on the trial judge's alleged bias. *See* TEX. R. APP. P. 33.1(a) (requiring a timely request, objection, or motion to preserve a complaint for appellate review). He did not file a motion to recuse the trial judge or seek a new trial on the basis of bias.

Only two categories of errors may be raised for the first time on appeal: (1) violations of rights which are waivable only and (2) denials of fundamental systemic requirements. *Proenza v. State*, 541 S.W.3d 786, 798 (Tex. Crim. App. 2017) (citing *Marin v. State*, 851 S.W.2d 275, 280 (Tex. Crim. App. 1993), *overruled on other grounds, Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997)). The Texas Court of Criminal Appeals rejected any common law "fundamental error" exception to the rules of error preservation based upon harm, holding the question of error preservation instead turns upon the "nature" of the error itself. *Proenza*, 541 at 796 (citing *Marin*, 851 S.W.2d at 278-80.).

Due process requires a neutral and detached hearing body or officer. *Brumit*, 206 S.W.3d at 645 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). A defendant has an absolute right to an impartial judge at both the guilt-innocence and punishment phases of trial. *Segovia v. State*, 543 S.W.3d 497, 503 (Tex. App.—Houston [14th Dist.] 2018, no pet.). A judge should not act as an advocate or adversary for any party. *Johnson v. State*, 452 S.W.3d 398, 405 (Tex. App.—Amarillo 2014, pet. ref'd). To reverse a judgment on the ground of improper conduct

or comments of the judge, we must be presented with proof (1) that judicial impropriety was in fact committed, and (2) of probable prejudice to the complaining party. *Id.* Absent a clear showing of bias, a trial court's actions are presumed correct. *Brumit*, 206 S.W.3d at 645. In conducting this review, we examine the entire record. *Id.*

We need not determine whether the alleged error requires an objection under *Marin* because, after reviewing the record, we find no apparent bias or partiality. *See Brumit v. State*, 206 S.W.3d 639, 644–45 (Tex. Crim. App. 2006) (declining to decide whether an objection is required to preserve an error of this nature where the record did not reflect partiality of trial court); *Graves v. State*, No. 05-19-00786-CR, 2021 WL 1558740, at *1–2 (Tex. App. Apr. 21, 2021).

Noble complains that the trial court rejected his request to publish Defense Exhibit 1 and 2 to the jury. The trial court stated the exhibits would cause unnecessary confusion to the jury as one was a motion from an unrelated case and the other exhibit was case law. *See* TEX. R. EVID. 403 (evidence can be excluded if the probative value is outweighed by a danger of confusing the jury). We conclude there was no error or bias stemming from this decision. These issues are overruled.

Noble also states the trial court erred by not including his requested jury charge instruction. Although Noble filed a motion requesting a reasonable doubt instruction be included, we do not find anywhere in the record where he presented

this motion to the trial court or made an oral request to include the instruction. This issue is not preserved and is waived. *See* TEX. R. APP. P. 33.1(a).

Noble complains the trial court showed bias by making comments that they would not have court so she could "present a gift to the Dallas Cowboys" through the veterans program. He also argued the trial court showed bias by stating that it was going to order the jury lunch from Campisi's Restaurant, because Noble believed that restaurant had ties to the Mafia. There was no objection made to these remarks and Noble fails to explain the bias he faced from these remarks. *See id.* These issues were not preserved and are waived. *Id.*

## IX.  Sufficiency of the Indictment

By thirteen issues, Noble challenges the sufficiency of the indictment. Prior to trial, Noble filed at least four *pro se* motions to quash the indictment. Three of those motions challenged the sufficiency of the indictment. The fourth challenged the constitutionality of the stalking and harassment statutes.

The Texas and United States Constitutions grant a criminal defendant the right to fair notice of the specific charged offense. *State v. Barbernell*, 257 S.W.3d 248, 250 (Tex. Crim. App. 2008). To provide this fair notice, the charging instrument must convey sufficient information to allow the accused to prepare a defense. *State v. Ross*, 573 S.W.3d 817, 820 (Tex. Crim. App. 2019). An indictment must set forth an offense "in plain and intelligible words." TEX. CODE CRIM. PROC. art. 21.02.

An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment.

*Id.* art. 21.11. An indictment that tracks the language of the statute usually gives sufficient notice. *State v. Jarreau*, 512 S.W.3d 352, 354 (Tex. Crim. App. 2017). A defendant forfeits the right to complain about any defect, error, or irregularity of form or substance in an indictment if he fails to object before trial commences. TEX. CODE CRIM. PROC. art. 1.14. We review a challenge to quash an indictment *de novo*. *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004). *Barbernell* prescribed a two-step analysis for evaluating the adequacy of an indictment's allegations. "First, a court must identify the elements of an offense." 257 S.W.3d at 255. Second, if an element of the offense describing an act or omission by the defendant has been defined by the Legislature, a court must ask whether the statute provides "alternative manners or means in which the act or omission can be committed." *Id.* If so, then the pleading "will supply adequate notice only if, in addition to setting out the elements of an offense, it also alleges the specific manner and means of commission that the State intends to rely on at trial." *Id.*; *Jarreau*, 512 S.W.3d at 354–55.

Noble filed multiple *pro se* motions to quash where he challenged the sufficiency of the indictment. He filed another motion to quash where he challenged the constitutionality of the stalking and harassment statutes. Prior to voir dire,

Noble's trial counsel presented one of his motions to quash to the trial court. That particular motion challenged the constitutionality of the stalking and harassment statutes only, and was denied by the trial court. Trial counsel never brought the motions to quash dealing with the sufficiency of the indictment before the trial court for ruling. Therefore, those issues are waived. *See* TEX. R. APP. P. 33.1(a).

Had trial counsel sought a ruling on all of Noble's filed motions to quash, however, the result would be the same because the indictment was sufficient. The indictment stated:

> That NEIL PAUL NOBLE, hereinafter called Defendant, on or about and between the 16th day of October, 2018 and the 5th day of November, 2018 in the County of Dallas, State of Texas, did did [sic] then and there on more than one occasion and pursuant to the same scheme or course of conduct that was directed specifically at another person, namely Messina Madson, hereinafter called the Complainant, knowingly engage in conduct, namely:
>
> • the Defendant, with intent to harass, annoy, alarm, abuse, torment, or embarrass the Complainant, sent repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, and offend the Complainant; and
>
> • the Defendant, with intent to harass, annoy, alarm, abuse, torment, or embarrass the Complainant, initiated communication and in the course of the communication made a comment, request, suggestion, or proposal that was obscene;
>
> and this conduct was conduct that:
>
> • constituted an offense under Section 42.07, Penal Code, and that the Defendant knew or reasonably should have known the Complainant would regard as threatening bodily injury or death for the Complainant; and

• caused the Complainant: to be placed in fear of bodily injury or death;

and to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and

• would cause a reasonable person to:

fear bodily injury or death for himself or herself; and

feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

The indictment properly tracked both the stalking and harassment statutes, and sufficiently described the offense as charged. *See Hughitt v. State*, 583 S.W.3d 623, 626 (Tex. Crim. App. 2019). The State was not required to allege all evidentiary facts it relied in the charging instrument. *State v Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004).

Noble also lists multiple other issues in his "Issues Presented" section under the "Sufficiency of the Indictment" heading. However, these issues are briefly mentioned but not further developed in his multiple briefs. Therefore, we find them to be inadequately briefed and waived. *See* TEX. R. APP. P. 38.1

## X. Self-Representation

Noble raises three issues related to his desire to represent himself in the proceedings. He states the trial court committed error by not allowing him to represent himself, and the competency proceedings were a pretext to deprive him of

his right to self-representation. He also requests in his brief to this Court that the Texas Court of Criminal Appeals reconsider a previous ruling.

Noble states in his amended brief that he mailed a request to represent himself in March 2020, but it was never filed. He mailed an "update" which was filed but makes no reference to his exercise of his right to self-representation. The appellate record contains no hearings or references to Noble wishing to represent himself during his proceedings. He never asked the trial court to set a hearing on any motion to represent himself nor did his trial counsel state that Noble wished to represent himself.

By not requesting a hearing before the trial court on his "requests" to represent himself, there is nothing preserved for appellate review. *See* TEX. R. APP. P. 33.1(a). Noble's issues related to self-representation are waived.

## XI. Cumulative Error

Noble also asserts the "totality of errors effected the fairness of the proceeding and the reliability of the result."

It is true that a number of errors, although harmless when considered independently, may be harmful in their cumulative effect. *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). However, there is "no authority holding that non-errors may in their cumulative effect cause error." *Gamboa v. State*, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009); *see Temple v. State*, 342 S.W.3d 572, 612 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App.

2013) (providing that reviewing courts do not consider the effect of waived errors under the cumulative error doctrine). Because we have found no error, Noble's cumulative error argument also fails.

## XII. Reformation of the Judgment

Finally, Noble also argues that the judgment should be reformed to correctly reflect a jury verdict of guilty instead of "Judgment of Conviction by Court—Wavier of Jury Trial." The State agrees. Noble was tried and convicted by a jury. An agreement on punishment was reached with the State and Noble's sentence was assessed by the trial court. Additionally, the judgment shows that Noble pleaded guilty to the offense. However, he pleaded not guilty prior to the start of his trial.

We have the power to modify a judgment to speak the truth when we have the necessary information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd) (en banc).

We sustain this issue and modify the judgment to state "Judgment of Conviction by Jury" in the heading and to show that Noble pleaded "Not Guilty" under the section title "Plea to the Offense."

Noble also alleges the judgment should be reformed to reflect a sentence of four years, instead of a probated sentence of ten years' imprisonment, probated for four years, jail credit for his time in custody, and a removal of the condition of probation requiring a GPS ankle monitor, house arrest, and outpatient substance

–38–

abuse treatment. We decline. Noble did not complain of these three issues at the time of his sentencing; therefore, he waived his right to complain of them on appeal. *See* TEX. R. APP. P. 33.1(a). Additionally, Noble stated he understood the terms of probation when asked by the trial court and raised no other objections regarding those terms of probation. His additional three issues regarding the judgment are overruled.

## CONCLUSION

For the foregoing reasons, we affirm the judgment as modified.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
210326F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

NEIL PAUL NOBLE, Appellant

No. 05-21-00326-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas Trial Court Cause No. F18-45998. Opinion delivered by Justice Partida-Kipness. Justices Molberg and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

to state "Judgment of Conviction by Jury" in the heading and to show that Noble pleaded "Not Guilty" under the section title "Plea to the Offense."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 1st day of December 2022.